**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Save the Colorado, et al., | No. CV-19-08285-PCT-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| United States Department of the Interior, et al., | |
| Defendants. | |

Before the Court is Plaintiffs Save the Colorado, Living Rivers, and Center for Biological Diversity's (collectively, "Save the Colorado") Motion to Compel Completion of the Administrative Record (the "Motion") (Doc. 48). The Court now resolves this Motion as follows.[1]

**I.   BACKGROUND**

This case involves a challenge to Defendant United States Department of the Interior's (the "Department") December 2016 Record of Decision (the "Decision") for the Glen Canyon Dam Long-Term Experimental Management Plan (the "Long-Term Plan"). (Doc. 1 ¶ 4.) The Long-Term Plan "is a 20-year plan for hourly, daily, and monthly releases from Glen Canyon Dam, consistent with the Grand Canyon Protection Act of 1992." (Doc. 52 at 7.) The Decision and its underlying Final Environmental Impact Statement ("FEIS"), which contains the Long-Term Plan, "includes a discussion

---

[1] Both parties have fully briefed the issues and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

of the specific details regarding the operation of the Glen Canyon Dam including release patterns in as small as hourly increments, non-flow actions, and experimental actions that may dictate future dam operations." (Doc. 1 ¶¶ 4, 85–86.)

In this lawsuit, Save the Colorado contends that the Decision and the FEIS "significantly undervalued projections of climate change impacts which forecast real detrimental effects to the Colorado River's supported ecosystems and its many domestic and industrial water users." (*Id.* ¶ 4.) Save the Colorado also alleges that the Department's failure to consider or explain certain information in the Decision, such as climate change impacts and a reasonable range of alternatives, was arbitrary and capricious in violation of both the Administrative Procedure Act ("APA") and the National Environmental Policy Act. (*See, e.g.*, *id.* ¶¶ 4, 22, 28, 31, 145.)

The Department filed the administrative record in this case in June 2020.[2] (Doc. 41.) The administrative record consists of almost 7,000 individual documents and over 145,000 pages. (Doc. 41-2; Doc. 41-3; Doc. 52 at 6.) Save the Colorado then filed the present Motion, arguing that, although the administrative record "is voluminous, it is not complete." (Doc. 48 at 8.) Save the Colorado points to categories of documents that the Department omitted from the administrative record and asks the Court to order the Department to add these categories of documents and produce a privilege log for any documents withheld based on privilege. (*Id.*)

The Department maintains that the administrative record is complete. It contends that Save the Colorado has failed to overcome the presumption of regularity afforded to administrative agencies. (Doc. 52 at 9–10.) The Department also argues that it is not required to provide a privilege log because deliberative documents are "outside the scope of the administrative record" and are not materials the Department relied on when formulating its Decision. (*Id.* at 10, 18.) The Department also notes that Save the Colorado is "already in possession of approximately 39,000" deliberative documents

---

[2] The Department also lodged an Affidavit Certification of Administrative Record with the administrative record. (Doc. 41–1.) This affidavit "declares under penalty of perjury" that the Department has filed "a true, correct, and complete copy of the Administrative Record for the [Decision]." (*Id.*)

based on a Freedom of Information Act ("FOIA") request that released "approximately 46,000 documents" in total. (*Id.* at 6–7, 15.) The Department contends that this FOIA response "includes the almost 7,000 documents in the administrative record." (*Id.* at 7 n.1.) The Department argues that, even though its FOIA response provided Save the Colorado with the very documents it wishes the Department to supplement the administrative record with, Save the Colorado still does not identify "specific documents for inclusion or specific arguments regarding why such specific documents should be included in the administrative record." (*Id.* at 10.) Save the Colorado also fails to articulate, the Department argues, how the "broad categories" of documents in the FOIA production, that Save the Colorado now wishes to supplement the administrative record with, were directly or indirectly before the decision-maker. (*Id.* at 15.)

## II.     LEGAL STANDARD

The APA requires a court to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706; *see also Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988) ("[J]udicial review of agency action is limited to review of the administrative record."). The whole administrative record "consists of all documents and materials directly or indirectly considered by the agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citation omitted). An agency is entitled to a presumption that it properly designated the administrative record.[3] *In re United States*, 875 F.3d 1200, 1206 (9th Cir. 2017), *vacated on other grounds*, 138 S. Ct. 443 (2017). Agencies may also exclude documents reflecting internal deliberations and those that probe the "mental processes of administrative decisionmakers." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).

To overcome this presumption, a party seeking supplementation of the administrative record "must show by clear evidence that the record fails to include documents or materials considered by the [agency] in reaching the challenged decision"

---

[3] Courts refer to this presumption as either the presumption of regularity or the presumption of completeness. Both have the same meaning and are used interchangeably.

- 3 -

and that the record as presented cannot allow "substantial" and "meaningful judicial review." *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1272, 1275 (D. Colo. 2010); *see also In re Delta Smelt Consol. Cases*, No. 1:09-CV-1053 OWW DLB, 2010 WL 2520946, at *2 (E.D. Cal. June 21, 2010) (holding that a party seeking supplementation "must present clear evidence that the administrative record is so inadequate that it will frustrate judicial review"). There are four narrow reasons that justify expanding the administrative record: (1) supplementation is necessary to determine whether the agency has considered all factors and explained its decision; (2) the agency relied on documents not in the record; (3) supplementation is needed to explain technical terms or complex subjects; or (4) plaintiffs have shown bad faith on the part of the agency. *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010) (citing *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005)). When moving for a court order that an agency supplement the administrative record with specific documents, a party must identify the documents and reasonable, non-speculative grounds for its belief that the documents were considered by the decision-makers involved in the determination. *Pinnacle Armor, Inc. v. United States*, 923 F. Supp. 2d 1226, 1239 (E.D. Cal. 2013). The party seeking supplementation has a "heavy burden" of demonstrating that the excluded materials are necessary to adequately review the agency decision. *Fence Creek Cattle Co.*, 602 F.3d at 1131.

## III. DISCUSSION

### A. Presumption of Regularity

Save the Colorado argues that the agency relied on certain categories of documents that were not included in the administrative record and supplementation is therefore necessary to determine the Department's actions. (Doc. 48 at 10–17.) In particular, Save the Colorado argues that (1) thousands of deliberative documents were omitted from the administrative record, (2) documents that were referenced or cited in two foundational studies were not included in the administrative record, and (3) the language used to certify the administrative record was insufficient. The Court will

address each argument in turn.

### 1. Deliberative Documents

A document is considered deliberative if "it reflects the give-and-take of the consultative process." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006). Examples of deliberative documents in the APA context include "recommendations, draft documents, proposals, suggestions, and other subjective documents that reflect the personal opinion of the writer rather than the policy of the agency." *Sierra Club, Inc. v. U.S. Fish & Wildlife Serv.*, 925 F.3d 1000, 1015 (9th Cir. 2019) (citation omitted). Courts rationalize that because probing an agency's deliberative process can be harmful, agencies may, in certain APA contexts, "withhold documents to prevent injury to the quality of agency decisions by ensuring that the frank discussion of legal or policy matters in writing, within the agency, is not inhibited by public disclosure." *Id.* at 1011 (citation omitted).

The Ninth Circuit has not squarely resolved whether deliberative documents must be part of the administrative record. (Doc. 48 at 19; Doc. 52 at 11.) Indeed, the only Ninth Circuit decision to address this issue admitted that the court has "not previously addressed whether assertedly deliberative documents must be logged and examined or whether the government may exclude them from the administrative record altogether." *In re United States*, 875 F.3d 1200, 1210 (9th Cir. 2017), *vacated on other grounds*, 138 S. Ct. 443 (2017). The two-judge majority in *In re United States* did not answer whether the government may exclude deliberative documents from the administrative record, but held that the district court's decision to require a privilege log and evaluate claims of privilege before including deliberative documents "in the record was not clearly erroneous as a matter of law." *Id.*

District courts in this circuit are split on whether the government may withhold deliberative documents from the administrative record. Some courts reason that because deliberative documents are limited to the agency's stated reasons and probe the mental processes of agency decision-makers, these materials are irrelevant and impermissible.

*See, e.g.*, *Ctr. for Biological Diversity v. Wolf*, 447 F. Supp. 3d 965, 976 (D. Ariz. 2020) ("To the extent any requested documents in the possession of Defendants are predecisional and deliberative, they need not be disclosed or unredacted."); *ASSE Int'l v. Kerry*, No. SACV 14-00534-CJC(JPRx), 2018 WL 3326687 (C.D. Cal. Jan. 3, 2018); *California v. Dep't of Labor*, No. 2:13-cv-02069-KJM-DAD, 2014 WL 1665290 (E.D. Cal. Apr. 24, 2014). "Others reason that deliberative materials are properly included in the administrative record under the Ninth Circuit's broad definition of 'the whole record.'" *Ksanka Kupaqa Xa'lcin v. U.S. Fish & Wildlife Serv.*, CV 19-20-M-DWM, 2020 WL 4193110, at *1 (D. Mont. Mar. 9, 2020); *see, e.g.*, *Washington v. U.S. Dep't of Homeland Sec.*, No. 4:19-CV-5210-RMP, 2020 WL 4667543 (E.D. Wash. Apr. 17, 2020); *Ctr. for Envtl. Health v. Perdue*, No. 18-cv-01763-RS, 2019 WL 3852493 (N.D. Cal. May 9, 2019); *Indigenous Envtl. Network v. U.S. Dep't of State*, No. CV-17-29-GF-BMM, 2018 WL 1796217 (D. Mont. Apr. 16, 2018).

Outside the Ninth Circuit, "[m]any courts look to D.C. Circuit case law in APA review cases, as the majority of such disputes occur in that circuit." *ASSE Int'l*, 2018 WL 3326687, at *2; *see also The Jurisdiction of the D.C. Circuit*, 23 Cornell J.L. & Pub. Pol'y 131, 132 (2013) ("It is old news that the D.C. Circuit hears proportionately more cases involving administrative law than do the other circuit courts."). The D.C. Circuit has held consistently that, absent a showing of bad faith or improper behavior, "deliberative documents are not part of the administrative record." *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) (internal quotation marks and citations omitted).[4]

The Court finds the Department's argument that deliberative documents are not part of the administrative record persuasive. (Doc. 52 at 10–13.) The Court's task is to assess the lawfulness of the agency's action based on the reasons offered by the agency, *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mutual*

---

[4] Other circuits follow the D.C. Circuit's conclusion that deliberative documents are not part of the administrative record. *See, e.g.*, *In re U.S. Dep't of Def. & U.S. Envtl. Prot. Agency Final Rule*, Nos. 15-3751, et al., 2016 WL 5845712, at *2 (6th Cir. Oct. 4, 2016) (citing D.C. Circuit case law to conclude that deliberative materials "are generally exempted from inclusion in the record in order to protect the quality of agency decisions by ensuring open and candid communications").

*Automobile Insurance Co.*, 463 U.S. 29, 50 (1983), not to "probe the mental processes" of agency decision-makers. *Morgan v. United States*, 304 U.S. 1, 18 (1938); *see also Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). "Moreover, the Ninth Circuit has cautioned that forced disclosure of predecisional deliberative communications can have an adverse impact on government decision-making." *ASSE Int'l, Inc.*, 2018 WL 3326687, at *3 (citing *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1162 (9th Cir. 1984)). Indeed, requiring disclosure of deliberative materials would "chill the frank discussions and debates that are necessary to craft well-considered policy." *In re United States*, 875 F.3d at 1211 (Watford, J., dissenting) (citing *Assembly of the State of California v. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992)).

The Department admits that there are deliberative documents, such as Department "draft documents" and "intra-agency emails," that are not part of the administrative record because they are "immaterial as a matter of law." (Doc. 52 at 6.) Save the Colorado contends that this admission, along with some non-binding district court cases requiring the government to produce deliberative materials or a privilege log, "overcomes" the presumption of regularity. (Doc. 50 at 3, 9–10.) The Court agrees with the Department that these deliberative documents were properly excluded for the administrative record. Considering Ninth Circuit and Supreme Court precedent in similar APA contexts, the Court is not in a position to "probe the mental processes" of agency decision-makers and interfere with the government's ability to craft well-considered policy by requiring the Department to supplement the administrative record with deliberative documents.[5] The Court is not persuaded with Save the Colorado's citation to several non-binding district court cases that allow the inclusion of deliberative documents based on a relaxed reading of the definition of "the whole record." (Doc. 50 at 9 n.6.) As

---

[5] A recent Ninth Circuit case, *Ramos v. Wolf*, 975 F.3d 872 (9th Cir. 2020), identified possible separation-of-powers concerns with district court's requiring extra-record discovery in APA cases. *Id.* at 900–01 (Nelson, J., concurring). Even the Supreme Court of the United States recognized that one "settled" principle of law is "further judicial inquiry into 'executive motivation' represents 'a substantial intrusion' into the working of another branch of Government and should normally be avoided." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019) (citation omitted).

previously stated, allowing deliberative materials in the administrative record would chill frank discussion in agency decision-making, and in turn, harm the quality of agency decisions. The absence of these documents does not overcome the presumption of regularity and the Department need not supplement the administrative record with deliberative materials.

### 2. Referenced Materials

Save the Colorado acknowledges that the Department "[p]roperly included in the administrative record" two Colorado River basin studies: (1) the 2011 *Colorado River Basin Water Supply and Demand Study: Technical Report B – Water Supply Assessment* and (2) the Department's subsequent 2012 *Colorado River Basin Water Supply and Demand Study*. (Doc. 48 at 15 (citing Doc. 41–2, Bates Nos. Ref-058918, -059373, at 75–76).) These two studies "were foundational to the development of the Long-Term Plan." (*Id.* at 16.) Save the Colorado contends that these two studies "draw upon a number of important scientific articles on the impact of climate change on future Colorado River basin water supplies" and that the Department left these referenced materials out of the administrative record. (*Id.* at 17.) The Department responds that the "144 referenced documents" in the two studies need not be added to the administrative record because they were not directly, or even indirectly, considered in making its Decision. (Doc. 52 at 18.)

Save the Colorado cites one case, *Oceana, Inc. v. Pritzker*, No. 16-cv-06784-LHK (SVK), 2017 WL 2670733 (N.D. Cal. June 21, 2017), to argue that documents referenced by "key analytical documents" will be found to have been "constructively considered" and part of the administrative record. (Doc. 48 at 15.) The court in *Pritzker* held "that a decision-maker can be deemed to have 'constructively considered' materials that, for example, were relied upon by subordinates or materials upon which a report that was considered rely heavily." 2017 WL 2670733, at *4. The Department responds that "[c]ourts have repeatedly ruled that the mere reference in a document contained within the record to another document does not require supplementation." (Doc. 52 at 18.)

Several courts have rejected the argument that if a document considered by the agency decision-maker refers to other documents, those underlying documents must be included in the record because this "argument stretches the chain of indirect causation to its breaking point and cannot be a basis for compelling completion of an Administrative Record." *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1277 (D. Colo. 2010); *see, e.g.*, *Grunewald v. Jarvis*, 924 F. Supp. 2d 355, 358 (D.D.C. 2013); *WildEarth Guardians v. Salazar*, No. CV-09-00574-PHX-FJM, 2009 WL 4270039, at *4 (D. Ariz. Nov. 25, 2009). Requiring such a sweeping application of what was indirectly before the agency would undermine the value of judicial review. *See Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006). This reason alone shows that documents merely referenced or cited in another document in the administrative record, without clear evidence that these were considered by the agency, cannot be supplemented to the administrative record.

Even if Save the Colorado's sole case, *Pritzker*, applied, Save the Colorado still fails to meet the "heavy burden" required of a party moving to supplement the administrative record. *See Fence Creek Cattle Co.*, 602 F.3d at 1131. For *Pritzker*'s "constructively considered" principle to apply, Save the Colorado must, at the very least, prove that the referenced materials were relied upon by subordinates or prove that either of the foundational reports relied heavily on the referenced materials that Save the Colorado contends should be included in the administrative record. Here, Save the Colorado has not met its "heavy burden" and does not argue convincingly that the "constructively considered" principle is met. Save the Colorado provides only two tables that list each reference cited in the two foundational reports. (*See* Doc. 48-3 at 2–11.) Save the Colorado makes no argument that a Department subordinate relied on any of the referenced materials in creating the two foundational reports. Save the Colorado also does not provide a proper showing that these referenced documents that are not in the administrative record were relied heavily on by either of the two studies. Save the Colorado's bare assertion that there are a "number of important scientific articles"

referenced in the two studies is not enough to overcome the presumption of regularity. (Doc. 48 at 17.)

Save the Colorado also takes issue with the Department's agreement to provide twenty-three studies and reports during the meet and confer for this Motion and contends that the Department "implicitly" concedes that the administrative record was incomplete when filed. (Doc. 48 at 12; Doc. 50 at 5–6.) The Department's contends that this agreement was not a concession but avoided "a debate regarding whether a hyperlink to an internet location in 2016 is equivalent to a physical or electronic attachment." (Doc. 52 at 17.) Allowing the Department's agreement to add a few documents to be enough to overcome the presumption of regularity would defeat the very purpose of the parties' obligation to meet and confer. Save the Colorado's "gotcha" approach is also too speculative to serve as a basis to overcome the presumption of regularity.

### 3. Certification

An agency's "certification of the administrative record is treated like other established administrative procedures, and thus entitled to a presumption of administrative regularity." *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007) (citations omitted). For this reason, "in the absence of clear evidence to the contrary, courts presume that public officers have properly discharged their official duties." *Id.* (citations omitted).

Save the Colorado argues that the administrative record's certification "fails to show that the record is in fact complete; it does not explain what process or guidance [the Department] followed in compiling the record, and does not indicate how [deliberative materials] were handled in the process." (Doc. 48 at 10.) According to Save the Colorado, this insufficient certification alone is enough to overcome the presumption of regularity. (*Id.* at 11.) Save the Colorado cites two cases to support its argument—*Oceana, Inc. v. Pritzker*, and *Gill v. Department of Justice*, No. 14-CV-03120-RS (KAW), 2015 WL 9258075 (N.D. Cal. Dec. 18, 2015). In *Pritzker*, the court held that an "inadequate certification" overcame the presumption of regularity because the certification failed to

explain what standard was used in identifying what materials should be included in the administrative record. 2017 WL 2670733, at *3. The court in *Gill* also found the presumption overcome when the certification failed to state that "all documents and materials directly or indirectly considered by the agency" were included. 2015 WL 9258075, at *5. The Department responds to this argument by stating there is no requirement in the APA to "use a set of exact words in a certification" or that it provide a certification at all. (Doc. 52 at 16.)

Save the Colorado cites no binding authority to show that an inadequate certification, or the complete absence thereof, can overcome the presumption of regularity. Other district courts have observed that, although federal agencies file "certifications with administrative records as a matter of practice, certifications are not required by the APA or any other law." *Banner Health v. Sebelius*, 945 F. Supp. 2d 1, 18 (D.D.C. 2013), *vacated in part on other grounds*, No. 10-cv-1638, 2013 WL 11241368 (D.D.C. July 30, 2013). Here, the Department filed a certification with its administrative record, which provides in part that the Department has lodged "a true, correct, and complete copy of the Administrative Record for the [Decision]." (Doc. 41-1.) The certification's language does not suggest that the Department erred in compiling the administrative record.

The two non-binding Northern District of California cases cited by Save the Colorado differ from this case in an important respect. Those cases found the certification to be inadequate and the presumption overcome because the plaintiffs proved the administrative record, on its face, contained "less than all documents and materials directly or indirectly considered by the agency in making its decision." *Gill*, 2015 WL 9258075, at *6; *see also Pritzker*, 2017 WL 2670733, at *3. Here, Save the Colorado has made no showing that the Department has certified an administrative record that, on its face, appears to be incomplete. Given that certifications are afforded this presumption, Save the Colorado has not provided clear evidence to suggest that public officers for the Department have improperly discharged their official duties. Save the Colorado's

semantical arguments about the certification are therefore not sufficient to overcome the presumption of regularity.

### 4.     Failure to Identify Specific Documents

When moving for a court order to supplement the administrative record with specific documents, a party must identify the documents and reasonable, non-speculative grounds for its belief that the documents were considered by the decision-makers involved in the determination. *Pritzker*, 2017 WL 2670733, at *2; *Pinnacle Armor, Inc. v. United States*, 923 F. Supp. 2d 1226, 1239 (E.D. Cal. 2013). Without identifying specific documents in its Motion, Save the Colorado contends there are "a smattering" of draft documents and intra-agency "Email messages" that are not included in the administrative record. (Doc. 48 at 14.) Save the Colorado states that it is aware of these deliberative documents' existence because the Department produced them in response to a FOIA request.[6] (*Id.*) The Department argues that Save the Colorado has "not identified reasonable grounds for [its] belief that certain documents were directly or indirectly considered" and does "not specify what documents [it] believe[s] were considered." (Doc. 52 at 14.) Only to its reply does Save the Colorado attach several "examples of documents from [the Department's] FOIA production," which includes "(a) drafts of chapters of [the Department's] Environmental Impact Statement / Long-Term Plan; (b) internal Email messages; and (c) other internal drafts of memoranda." (Doc. 50 at 4 n.2.)

Save the Colorado has not made a particularized showing of what documents were omitted from the administrative record. The documents that Save the Colorado attached to its reply are deliberative documents, which this Court has already held are not part of

---

[6] The Court agrees with the Department's point that just because the Department "chose to produce deliberative documents in response to [Save the Colorado's] FOIA request," that does not mean "those documents are necessarily part of the administrative record." (Doc. 52 at 15.) *See Stand Up for California! v. U.S. Dep't of Interior*, 71 F. Supp. 3d 109, 117 (D.D.C. 2014) ("An agency's possession of certain records, as confirmed by their disclosure in response to a FOIA request, is not sufficient to show that the same records were considered by the agency in connection with a decision subject to an APA challenge, and consequently, mere possession triggers no requirement to include such records in the administrative record.").

the administrative record as a matter of law. *See supra*, Section III.A.1. Save the Colorado has specified no other non-deliberative documents that the Department may have improperly omitted from the administrative record. Without this showing, the Court cannot require the Department to supplement the record with any specific documents.

Save the Colorado is already in possession of "approximately 46,000 documents" that the Department provided in response to a FOIA request. (Doc. 52 at 15; Doc. 48 at 14; *see also* Doc. 48-1, Saul Decl. ¶ 5.) Since there are "approximately 39,000" deliberative documents in the "approximately 46,000 documents" produced from the FOIA request, there are potentially thousands of non-deliberative documents in Save the Colorado's possession, some of which might not be in the administrative record. Given Save the Colorado has thousands of non-deliberative documents in its possession, but has not identified with particularity in its Motion, this Order is without prejudice to Save the Colorado later moving to supplement the administrative record with a *particular document* if it can show that the document falls within the category of "documents and material directly or indirectly considered by agency decision-makers." *Thompson*, 885 F.2d at 555.

### B. Privilege Log

"[D]eliberative documents are not part of the administrative record to begin with, so they do not need to be logged as withheld from the administrative record." *Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15, 32 (D.D.C. 2013), *aff'd sub nom. Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46 (D.C. Cir. 2015) (citations and quotations omitted). "As one Court succinctly explained, 'requiring the [Department] to identify and describe on a privilege log all of the deliberative documents would invite speculation into an agency's predecisional process and potentially undermine the limited nature of review available under the APA.'" *Stand Up for California!*, 71 F. Supp. 3d at 123 (quoting *Great Am. Ins. Co. v. United States*, No. 12 C 9718, 2013 WL 4506929, at *9 (N.D. Ill. Aug. 23, 2013)).

Save the Colorado argues that this Court should order the Department to produce a

"privilege log identifying those documents excluded from [its] administrative record on the basis of privilege." (Doc. 48 at 17.) Save the Colorado again contends that the Department's deliberative materials should be logged to the extent they are privileged. (*Id.* at 17–21.) The Department responds that "deliberative materials are not excluded under a claim of privilege and need not be identified in a 'privilege log.'" (Doc. 52 at 18–19 (citing *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019)).) A privilege log would therefore be no use for documents that the Department does not contend are privileged. Because this Court has held that deliberative documents are not part of the record to begin with, *see supra*, Section III.A.1, there is no reason for the Department to file a privilege log as to these documents. Save the Colorado has not made a showing of other privileged documents—such as documents protected by the attorney-client privilege—that would require the Department to produce a privilege log.[7] Given that the Court is allowing Save the Colorado an opportunity to file another motion to supplement the administrative record, this holding is without prejudice that a privilege log would be necessary, outside the context of deliberative documents, later in this case. As it stands, nothing in Save the Colorado's Motion would require the Department to produce a privilege log.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Save the Colorado's Motion to Compel Completion of the Administrative Record is **denied without prejudice**. (Doc. 48.) Save the Colorado may bring a new motion to supplement the administrative record with specific, non-

---

[7] Save the Colorado also points to a dated Department memorandum to argue that the Department's position conflicts with its "own policy on assembling administrative records." (Doc. 48 at 20–21.) First, Save the Colorado cites "no authority for the proposition that governmental agencies are not permitted to change their internal guidance on these matters, or that the changing of guidance is otherwise relevant." *Nat'l Tr. for Historic Pres. v. Bernhardt*, No. CV 19-05008-PHX-MHB, 2020 WL 5221647, at *3 (D. Ariz. Aug. 5, 2020). Second, the guidelines that Save the Colorado discusses "are not relevant to the issue of whether deliberative documents should be included in the [administrative record], or whether a privilege log should be provided, and in any event, the most current guidance in effect at the time of [filing this case] suggested the withholding of deliberative documents." *Id.* Save the Colorado's argument is not persuasive.

- 14 -

deliberative documents or materials and make the proper showing that these documents were considered by agency decision-makers.

**IT IS FURTHER ORDERED** that if Save the Colorado chooses to file a new motion regarding the sufficiency of the administrative record or for leave to take discovery, the motion(s) shall be filed no later than **March 5, 2021**. Any motion shall not re-argue any issues rejected in this Order.

**IT IS FINALLY ORDERED** that the parties shall submit a supplemental joint proposed case management schedule, to include a proposed briefing schedule for summary judgment motions, by either (a) **March 12, 2021**, if Save the Colorado does not file a motion regarding the sufficiency of the administrative record or for leave to take discovery; or (b) should Save the Colorado file a motion, within 14 days of the Court's resolution of that motion.

Dated this 4th day of February, 2021.

Michael T. Liburdi
United States District Judge